**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

INTERNATIONAL PAINTERS AND     \*
ALLIED TRADES INDUSTRY PENSION    \*
FUND, et al.                        \*
                                  \*
     Plaintiffs,                \*
                                  \*      **Case No. SAG-17-1559**
         v.                    \*
                                  \*
MADISON COATINGS CO., INC.        \*
                                  \*
     Defendant.              \*
                                  \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

In this case, Plaintiffs International Painters and Allied Trade Industry Pension Fund ("Pension Fund"), Tim D. Maitland, a fiduciary on behalf of the Pension Fund, Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI") (collectively, "Plaintiffs") seek unpaid contributions and associated damages from Defendant Madison Coatings Company, Inc. ("Madison"). Plaintiffs have filed a Motion for Summary Judgment, ECF 45, with an associated Memorandum of Law, ECF 45-1.[1] I have reviewed those filings, along with Madison's Opposition, ECF 52, and Plaintiffs' Reply, ECF 53.

---

[1] In a footnote, Plaintiffs note that Madison, despite seeking leave to file an Answer to the Amended Complaint, ECF 48, never filed one. ECF 52 at 2 n.1. Accordingly, Plaintiffs seek default judgment, in the alternative to their motion for summary judgment. ECF 45. For the purposes of adjudicating the pending Motion, I will consider Madison's proposed Answer, attached at ECF 52 as Exhibit B, as if it had been filed, and I will decline to enter default judgment, but will consider the Motion for summary judgment on its merits.

No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons addressed herein, the Motion will be granted, and damages awarded as described herein.

## I.      FACTUAL BACKGROUND[2]

On June 7, 2017, Plaintiffs filed a Complaint in this Court alleging that Madison failed to make contributions required under the Employee Retirement Income Security Act of 1974 ("ERISA") and governing contracts.  ECF 1.  Specifically, Madison employed members of local labor unions or district councils affiliated with the International Union of Painters and Allied Trades ("the Union") and agreed to abide by a Collective Bargaining Agreement ("the CBA").  ECF 45-3, ¶¶ 4-5, 7-8.  The CBA, along with the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), established and maintained the Pension Fund.  *Id*. ¶¶ 4-6.  The Pension Fund is an "employee benefit pension plan" as defined by ERISA.  *Id*. ¶ 2.

As a corporate employer using Union employees, Madison agreed to abide by the terms of the CBA and the Trust Agreement.  *Id*. ¶ 5.  Those obligations included making full and timely payment on a monthly basis to the Funds as required by the CBA, Trust Agreement, and plan documents, and filing timely remittance reports with the Pension Fund detailing all the employees or work for which contributions were required under the CBA.  *Id.* ¶ 6.  A failure to comply with those obligations subjects an employer to damages including liquidated damages, interest, audit costs, and litigation costs, including attorneys' fees.  ECF 45-9 at 72, ¶ 10.11(b).

In July, 2016, an auditor retained by Plaintiffs conducted an audit of Madison's payroll records.  ECF 45-3, ¶ 8; ECF 45-11.  The audit revealed a substantial delinquency in contributions.  ECF 45-11 at 3.  Madison disputed the audit's findings on several grounds, resulting in some significant reductions in the amount sought by Plaintiffs.  ECF 45-3, ¶ 8(b)-(g); ECF 45-15 at 3.

---

[2] The following facts are drawn in the light most favorable to the non-moving party, Madison.

Pertinent to the parties' remaining dispute, in 2015, and again in 2018, Madison reached settlement agreements with employee benefit funds ("the Local NY Funds") associated with two local New York chapters, Local Union No. 806 and District Council 9. ECF 52, Ex. D, F. The 2015 and 2018 settlement agreements included payment of "benefit fund contributions to the Local 806 Structural Steel and Bridge Painters of Greater New York Employee Trust Funds and the District Council 9 Painting Industry Insurance & Annuity Funds," ECF 52 at 49 (Ex. F), along with contributions owed to one of the Local NY Union chapters, the Local 806 Structural Steel and Bridge Painters of Greater New York, *id.*

The Parties to the settlement agreements were the Local NY Funds and Madison, not Local Union No. 806 or District Council 9 themselves. *See* ECF 52 at 41 (Ex. D) ("THIS SETTLEMENT AGREEMENT has been entered into between the Trustees of the District Council 9 Painting Industry Insurance & Annuity Funds and Structural Steel and Bridge Painters Local Union No. 806 Funds" and Madison); *id.* at 49 (Ex. F) ("THIS SETTLEMENT AGREEMENT has been entered into between the Trustees of the Local 806 Structural Steel and Bridge Painters of Greater New York Employee Trust Funds and the Trustees of the District Council 9 Painting Industry Insurance & Annuity Funds" and Madison). Although the Settlement Agreements purported to collect "Pension" contributions, in addition to contributions to the Local NY Funds themselves, *id.* at 47 (Ex. E); *id.* at 52 (Ex. G), the agreements do not specify where, if anywhere, the Local NY Funds would remit the "pension" amounts collected. Plaintiffs acknowledge receipt of one check from the Local NY Funds for $33,400.50, collected on the Pension Fund's behalf in connection with the 2015 settlement agreement. ECF 45-3, ¶ 8(b). Plaintiffs credited the check against Madison's delinquency. *Id.*

Plaintiffs also submitted a Declaration of Judith Sznyter, Esq. in connection with their Motion for Summary Judgment. ECF 45-25. Ms. Sznyter's declaration supported Plaintiffs' request for attorneys' fees and costs in the amount of $117,726.66. ECF 45-2 at 39; 45-25.

## II. LEGAL STANDARDS

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party, bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-movant must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-49.

In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III.   DISCUSSION

### A.     Madison's Liability under ERISA

Although many of the facts in this case are undisputed, Madison suggests that the overall audit results "are suspect" given the several issues that have subsequently been resolved, in Madison's favor, between the parties. ECF 52 at 9. Madison concedes that it owes contributions to Plaintiffs in the amount of $13,032.33, but challenges the remainder of the unpaid contributions Plaintiffs claim.[3] *Id.* ¶ 12.

Section 515 of ERISA provides in relevant part: "Every employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145 (2012). ERISA also allows the recovery of damages in an action to enforce the payment of unpaid contributions. *Id.* § 1132(g)(2). As the Fourth Circuit has noted, "section 515 puts multiemployer plans in a stronger position than they otherwise occupy

---

[3] The numbers cited by the Parties do not completely reconcile. Plaintiffs now claim total unpaid contributions in the amount of $33,461.23. ECF 45-3 ¶ 8(h). Madison suggests that Plaintiffs seek $19,473.87 from "Local 806/Dist 9," $72.60 from "Local 58," $208.80 from "Local 460," and $13,714.97 from "Dist. 91." ECF 52 at 4. That total is $33,470.24. Ultimately, it appears from Madison's opposition that it is only challenging the $19,473.87 it contends to have been part of its settlements with "Local 806/Dist. 9." *See* ECF 52 at 2, ¶ 8 ("Pursuant to the third and most recent audit Defendant disputes the total amount of $19,473.87 in contributions and the related interest, and liquidated damages."); *id.* at 4 ("Defendant disputes the final audit amounts for Local 806/Dist 9 based on the claims were settled and the present audit is over stated by $19,473.87, not inclusive of the interest, penalties and liquidated damages related thereto."). Thus, resolving the minor discrepancy in the parties' numbers is unnecessary to address the merits of Madison's contention.

under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). Specifically, an employer is prohibited from asserting certain defenses against a multiemployer fund that the employer might be able to assert against the union itself. *See, e.g.*, *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (observing that section 515 generally "preclud[es] employers from raising a variety of contract defenses as a means of avoiding the obligation to contribute to employee benefit plans"); *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1153 (7th Cir. 1989) (en banc) (noting that oral agreement to modify the text of a CBA cannot be enforced against pension plans).

The Labor Management Relations Act (LMRA) provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Employee benefit fund trustees have standing to sue under § 185(a) as third-party beneficiaries of a CBA. *See, e.g.*, *Hudson Cty. Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F. Supp. 2d 565, 568 (D.N.J. 2000); *Bd. of Trs. of Chi. Plastering Inst. Pension Trust Fund v. William A. Duguid Co.*, 761 F. Supp. 1345, 1347 n.2 (N.D. Ill. 1991).

The parties here do not contest Madison's status as an employer required to make contributions, or Plaintiffs' standing as third-party beneficiaries of the CBA. ECF 52 at 4-5; *see Hudson Cty. Carpenters,* 127 F. Supp. 2d at 568 ("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515 and a violation of LMRA § 301."). The issue presented by Madison is simply whether the $19,473.87 Plaintiffs seek to recover in unpaid contributions for employees subject to the Local Union No. 806 Labor Contract was already paid, pursuant to the 2015 and

2018 settlement agreements. ECF 52 at 2, ¶ 8; *see id.* at 9-11. In Madison's view, the CBA permitted "Local 806/Dist 9" to collect contributions for the Pension Fund and release the Pension Fund's claims. *See id.* at 5 (citing the CBA, providing, "the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding"). Madison has submitted declarations from its President and its Controller, establishing that they believed that the funds Madison paid pursuant to the 2015 and 2018 settlement agreements "would be forwarded to the correct fund" and would resolve the contributions owed to the Pension Fund. *See* ECF 52 at 82, ¶ 25 (Capps Decl.); *id.* at 85, ¶¶ 7-8 (Gonzalez Decl.).

Madison's position is unsupported by the law. The relationships between individual local unions and multiemployer plans are complex, but ERISA section 515 was intended to clarify the rights and relationships between the entities in favor of multiemployer benefit plans. *See Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 118 F.3d at 1021 ("Because multiemployer plans typically involve many employers and unions across the nation, in most cases it would be difficult and costly for such plans to monitor the problems or understandings that arise between the individual unions and employers.")

In *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 460-62 (1960), a union violated its CBA by engaging in strikes and work stoppages, causing damages to the employer. The employer then chose not to make its payments to the union welfare fund pursuant to the CBA, in order to recoup its damages. *Id.* at 461-62. The Supreme Court held that the trustees of the welfare fund could obtain "immediate and unconditional execution, and interest" on the full amount owed to it, regardless of the damages the employer had sustained at the hands of the union. *Id.* at 471. The

Supreme Court's rationale rested on the fact that the fund, as third-party beneficiary under the CBA, had not breached any duty to the employer. *Id.* at 470-71.

Similarly, Madison's evidence that it made settlement payments earmarked for "pension" contributions to the Local NY Funds does not create a genuine issue of material fact as to Plaintiffs' claims regarding Madison's unpaid contributions. Madison has not adduced evidence to suggest that the Local NY Unions (and certainly not the Local NY Funds, who were the actual parties to the settlement agreements) either had express contractual authority to release Plaintiffs' claims as third-party beneficiaries, or exercised such authority. To the extent Madison believes that payments it made to the Local NY Funds were not sent where they should have been, its claims should be addressed to the Local NY Funds, not to Plaintiffs, who were not party to the settlement agreements. *See* ECF 52 at 41 (Ex. D); *id.* at 49 (Ex. F). Under *Lewis,* Madison's claims against the Local NY Funds do not affect Plaintiff's rights to enforce the CBA as a third-party beneficiary. *See* 461 U.S. at 470-71. The law is clear that Plaintiffs are permitted to pursue their unpaid contributions from Madison, irrespective of any agreement that Madison may have reached with local union chapters or pension funds associated with local union chapters. *See Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 118 F.3d at 1021 ("[A]n employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in the [CBA].").

Accordingly, there is no genuine issue of material fact to preclude a grant of summary judgment to Plaintiffs for the full amount of current unpaid contributions, plus the other damages to which Plaintiffs are contractually entitled. The undisputed evidence demonstrates that Plaintiffs are entitled to: $36,125.26 in delinquent contributions, ECF 45-3, ¶¶ 7(b), 8(h); 20% of that amount in liquidated damages, or $7,225.05, *id.* ¶ 10; *see* ECF 45-9, § 11.29 (the CBA); interest

calculated in accordance with the CBA's terms, ECF 45-3, ¶ 9; ECF 45-9, § 11.29; and audit costs in the amount of $4,093.90, ECF 45-12, ¶ 8.

### B. Attorneys' Fees

Madison's remaining dispute relates to the reasonableness of Plaintiffs' request for attorneys' fees. ECF 52 at 11-14. ERISA "mandates an award of reasonable attorneys' fees when, as here, a fund prevails in an action for unpaid contributions pursuant to 29 U.S.C. § 1145." *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 285 (3d Cir. 2007) (citing 29 U.S.C. § 1132(g)(2)(D)). Madison concedes that Plaintiffs are eligible for reasonable attorneys' fees as the prevailing party, but disputes the reasonableness of their claimed fees. ECF 52-1 at 11-14.

Initially, Plaintiffs claim a total of $1,923.66 in costs for items such as photocopies, computer research, filing fees, travel costs, and service fees. ECF 45-26 at 21. Those are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients, and they will be awarded.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award" (internal quotations omitted) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987))). A trial court may exercise its discretion in determining the lodestar amount because it possesses a "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. HUD*, No. MJG–95–309, 2002 WL 31777631,

at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)).

Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing

whether the hours worked were reasonable or whether the request includes hours that were

unnecessary or duplicative. *See Grissom*, 549 F.3d at 320-21. In evaluating both the lodestar

calculations and the overall reasonable fee, this Court uses "the twelve well-known factors

articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)

and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978)."

*Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n. 19 (quoting *Johnson*, 488 F.2d at 717–19).

Madison challenges whether Plaintiffs' request complies with several of these factors,

particularly focusing on the fact that Plaintiffs are recovering less than they originally sought in

this action, and less than the total amount of attorneys' fees claimed. ECF 52 at 11-14. Although

it is true that Madison eventually persuaded Plaintiffs to forego seeking some of the contributions

they initially pursued, Madison's lack of diligence in defending the suit, and lack of attentiveness

to providing discovery in a readily usable fashion, greatly increased the time and labor that would

have otherwise been required from Plaintiffs' counsel. *See* ECF 53 at 13-14 (summarizing

additional efforts caused by Madison's unresponsiveness and discovery practices). Thus, I do not

find the relatively high number of hours worked on this case to be attributable to inflated billing

by Plaintiffs' counsel. Second, while the legal questions presented may not have been particularly

novel or difficult, Madison's determination to contest the case (unsuccessfully) through summary judgment further increased the litigation cost to Plaintiffs. Finally, although the amount of fees and costs requested exceeds the ultimate recovery in the litigation, there is no element of proportionality in ERISA fee claims. *See, e.g.*, *United Auto. Workers Local 259*, 501 F.3d at 295 ("We are not alone in concluding that requiring proportionality would neglect the language of ERISA and frustrate its purpose."); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 n.8 (6th Cir. 1995) ("[B]ased on the policy of the ERISA fee-shifting provision, the amount of the fee award may exceed the amount of money damages.").

While the particular lodestar factors argued by Madison do not support a reduction in the fees sought, some of the other factors counsel in favor of a reduction. Citing to their view of reasonable hourly rates in the relative jurisdictions, Plaintiffs' attorneys billed an equal hourly rate of $375 for each of seven different attorneys who worked on the matter, and $120 for each of their three paralegals. ECF 45-25, ¶¶ 13-14. Because the seven attorneys had varying years of practice, the hourly rates charged for each attorney do not entirely comport with the "Guidelines for hourly rates" set forth in Appendix B of the Local Rules of this Court. The Guidelines are not definitive, but are designed "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B.3 n.6. However, the Court typically weighs the Guidelines heavily in determining the reasonableness of fees sought.

Initially, in light of some of the specific challenges to billing entries propounded by Madison, I reviewed the billing statements to ensure that Plaintiffs' counsel complied with the "Guidelines Regarding Compensable and Non-Compensable Time." *Id.* at B.2. Those guidelines provide that only one lawyer can be compensated for attending court proceedings and intra-office conferences, absent specific justification. *Id.* at B.2(c)-(d). Applying those Guidelines to

Plaintiffs' billing statements, I reduced the hours billed to one attorney on each of the following dates: May 25, 2017; February 16, 2018; August 16, 23, 27, and 28, 2018; September 6 and 18, 2018; October 25 and 29, 2018; November 5, 15, 19, 20, 28, and 29, 2018; and December 10 and 12, 2018; and January 3, 2019. ECF 45-26 at 1, 3, 12-13, 15-19. In addition, there was one billing entry on May 24, 2017 which reflected that the attorney had worked 0.1 hours, but billed 0.2 hours, so I reduced that entry to the lower amount. *Id.* at 1. Finally, of the two attorneys attending the settlement conference on December 12, 2018, one billed for 7.0 hours and one billed for 9.0 hours, without any explanation for the discrepancy. *Id.* at 18. Neither attorney distinguished between his or her time attending the conference and his or her travel time, *see id.*, the latter of which is generally not compensable under the Guidelines unless devoted to substantive work for a client, *see* Loc. R. App'x B.2(e). The attorneys did not explain why they would have been unable to perform substantive work, for this or some other client, while on the train to the settlement conference. As a result, I permitted the higher-billing attorney to charge 5.0 hours for the settlement conference, which I estimated to be the actual in-court time. Following those reductions, I determined that attorneys had worked a total of 281.6 compensable hours, as follows (identified by initials on the billing statements):

| | |
|-----|------|
| MTT | 25.9 |
| MWM | 3.1 |
| DMC | 19.6 |
| DJK | 2.4 |
| RPM | 196.2 |
| JAS | 33.2 |
| JEG | 1.2 |

*See* ECF 45-25; ECF 45-26.  Additionally, two paralegals, LJP and KMK, worked a total of 20.4 and 4.4 compensable hours, respectively, and my review of the billing statements reveals no issues with the hours these paralegals billed.  *See* ECF 45-25; ECF 45-26.  Thus, in all, Plaintiffs were billed for 306.4 hours of legal work.

Regarding the hourly rates charged, first, Plaintiffs' attorneys charged $120 per hour for time billed by paralegals LJP and KMK.  ECF 45-25, ¶ 3.  I find that this amount is reasonable.  *See* Loc. R. App'x B.3(f).  However, the $375 "blended" hourly rate charged for each attorney is problematic.  Of the seven attorneys, four had less than five years of legal experience:  MTT, MWM, RPM, and DJK.  ECF 45-25, ¶¶ 8-10.  Those four junior attorneys billed a total of 227.6 hours, or 80.8% of the total attorney hours billed to the case.  The Guidelines provide a presumptively reasonable range of hourly rates, for attorneys with less than five years of legal experience, of $150-225 per hour.  *See* Loc. R. App'x B.3(a).  One attorney, JEG, who accounted for a very small number of hours, had six years' experience.  ECF 45-25, ¶ 7.  The Guidelines provide that the presumptively reasonable hourly rate for an attorney of his experience would be $165-300 per hour.  *See* Loc. R. App'x B.3(b).  Finally, two of the attorneys, DMC and JAS, had between 15 and 19 years of experience, ECF 45-25, ¶¶ 5-6, making their presumptively reasonable range between $275-425 per hour, *see* Loc. R. App'x B.3(d).  Those two attorneys collectively accounted for 18.8% of the total hours billed.

In light of the fact that junior associates billed the overwhelming majority of the hours on the case, the "blended rate" of $375 for attorney time on this case is not reasonable.  There might be cases, even using the same subset of seven attorneys, where that blended rate could be entirely reasonable, if the number of hours billed were more heavily weighted toward the experienced attorneys.  Given the imbalance in hours worked here, however, direct calculation of each

attorney's hours at a reasonable rate for his or her time provides a fairer result. Using the high end of the Guidelines ranges for each attorney's experience level (which I find to be appropriate given the generally higher rates charged by ERISA practitioners), time billed by MTT, MWM, RPM and DJK is charged at $225 per hour, time billed by JEG is charged at $300 per hour, and time billed by JAS and DMC is charged at $425 per hour. Combining this with the $120 per hour charged for time billed by paralegals LJP and KMK, the result is an attorney's fee award of $76,986.00,[4] plus the $1,923.66 in costs as described above.

## IV.      CONCLUSION

For the reasons stated, Plaintiffs' Motion for Summary Judgment is GRANTED, and damages are awarded as described herein. An implementing Order follows.


Dated: October 31, 2019                                    _____/s/_____
                                                                        Stephanie A. Gallagher
                                                                        United States District Judge

---

[4] Of this award, $74,010.00 represents the total fees from hours billed by attorneys. Taking into account the 281.6 hours billed by the attorneys, the equivalent blended hourly rate award would be $262.82, which more fairly accounts for the amount of work performed by junior associates in this matter.